IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00494-EWN-MEH

ZOLO TECHNOLOGIES, a Delaware Corporation,

    Plaintiff,

vs.

ROADWAY EXPRESS, INC., a Delaware Corporation,

    Defendant.

_____

**ORDER ON DEFENDANT'S MOTION FOR SANCTIONS
FOR SPOLIATION OF EVIDENCE**
_____

    Before the Court is Defendant's Motion for Sanctions for Spoliation of Evidence (Docket #62). The Motion has been referred to this Court for decision (Docket #64). The matter is fully briefed. The Court heard oral argument on the Motion on March 29, 2006. For the reasons stated below, the Court **denies** the motion.

I.    Background

    In this lawsuit, Plaintiff is seeking $90,000 for damage to electronic equipment that was shipped (and allegedly mishandled) by Defendant. The item that was shipped is known as a BOSS Rack Assembly. It is undisputed that the equipment was damaged while Defendant was transporting it. Defendant contends that Plaintiff improperly packaged the equipment for shipping. In particular, Defendant contends that certain components of the Rack Assembly were arranged loosely on a shelf system, rather than being tied down to the shelves piece by piece. It is Defendant's position that the burden on Plaintiff at trial under its Carmack Amendment claim (Interstate Commerce Act, 49 U.S.C. § 14706) will be to establish not only that Defendant's actions caused damage to the equipment, but

also that the equipment was properly prepared for transportation.

On October 13, 2005, pursuant to a request under Fed. R. Civ. P. 34, Defendant sought to examine the damaged Rack Assembly in order to prepare its defense. Plaintiff maintained the damaged Rack Assembly, in its original damaged condition, for a period of time (during which an independent loss adjuster[1] examined the damaged items), but subsequently, starting approximately October 22, 2004,[2] in an alleged effort to mitigate its damages, Plaintiff disassembled the damaged equipment and reused what it could. Defendant contends that this action constitutes spoliation of evidence and seeks, as a sanction, an order from this Court (1) precluding Plaintiff from introducing evidence that the Rack Assembly was adequately constructed and packaged for transportation, and (2) instructing the jury that it may infer from Plaintiff's failure to produce the damaged Rack Assembly that Plaintiff failed to properly prepare it for transportation.

The Plaintiff contends that Defendant was given the opportunity to inspect the damaged equipment and, indeed, did so through MTI Inspection Services. Plaintiff also contends that it had only one Rack Assembly with a replacement cost of $150,000; that it used the Rack Assembly in its day-to-day business; and that its business would have come to a halt had it not salvaged the damaged Rack Assembly. Finally, Plaintiff contends that at the time it salvaged the Rack Assembly, Defendant had not given any indication that it wanted to inspect it (beyond the inspection that MTI Inspection

---

[1] After the damage occurred, Defendant hired MTI Inspection Services, an "independent inspector of damaged freight" whose agent examined the damaged equipment and has testified that the damage was attributable to "how it was packaged." The agent inspected the damaged equipment, took pictures, and prepared a report.

[2] On that date, Plaintiff received an offer of $1,817.61 on its claim for damage. Thereafter, Plaintiff and Defendant attempted to negotiate the amount that Defendant would pay. The lawsuit was commenced on March 15, 2005.

Services had performed), nor was there any reasonable expectation of litigation.

In the parties' briefs and at the hearing in this matter on March 30, 2006, it was established that Plaintiff's counsel represented in late September, 2005, that the damaged Rack Assembly and packaging would be made available for inspection, although at the time that representation was made, the damages Rack Assembly no longer existed. Two weeks later, Defendant submitted its request to inspect. This request was submitted at a time within the discovery deadline in this case. After the discovery deadline had passed, on December 1, 2005, Plaintiff instructed Defendant that the Rack Assembly had been salvaged long ago. During discovery, Defendant had the opportunity to inquire into the manner in which the Rack Assembly was packaged by Plaintiff and, in fact, inquired into that issue with Michel Cuypers, manufacturing manager for Plaintiff, after discovery had closed in this case, November 22, 2005. At the hearing, Plaintiff represented that Cuypers was not the person with the most knowledge on that issue.

II.     Discussion

The Tenth Circuit's initial voyage into the law of sanctions for spoliation (as opposed to an independent tort claim based on spoliation) was in *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997) ("[T]he parties have not directed us to precedent from this circuit on the evidentiary doctrine of spoliation and we cannot locate any such precedent . . . ."). The *Aramburu* court did not discuss the authority for such a sanction. Several years later, in *Jordan F. Miller Corp. v. Mid-Continent Aircraft Servs.*, 139 F.3d 912 (Table), 1998 WL 68879 (10th Cir. Feb. 20, 1998), the court explained that the authority emanates from the inherent powers of the federal courts "'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* at 1998 WL 68879 *3 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). *See Smith v. Northwest Fin.*

*Acceptance, Inc.*, 129 F.3d 1408, 1419 (10th Cir. 1997) ("[A] federal court possesses the authority to impose . . . sanctions on its inherent power to control and supervise its own proceedings."), *quoted in Jordan F. Miller Corp.*, 1998 WL 68879 at *3.

    A.    <u>Request for an Adverse Inference</u>

Tenth Circuit law on spoliation of evidence is not well developed, other then with respect to a movant's request that the Court or jury draw an adverse inference against the party accused of spoliation. In this regard, Defendant has not established the elements for an adverse inference sanction based on spoliation of evidence. Only the bad faith loss or destruction of evidence will support the kind of adverse inference that Defendant seeks, *i.e.*, that production of the damaged Rack Assembly in its original packaging would have been unfavorable to Plaintiff. *Jordan F. Miller Corp.*, 1998 WL 68879 at *3 (10th Cir. Feb. 20, 1998) (citing *Aramburu*, 112 F.3d at 1407). "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu*, 112 F.3d at 1407.

The Court finds that here, as in *Aramburu*, the record does not establish bad faith. First, the record before the Court contains uncontradicted evidence that Plaintiff preserved the damaged equipment in its original packaging for a time period sufficient for Defendant to inspect it. Defendant did not send one of its own employees to inspect it, but rather hired an expert to do so. The expert, while not retained for purposes of litigation but rather to determine the extent of the loss, took photographs and prepared a report, copies of which the parties have. Indeed, the report is favorable to the Defendant's position, because the agent for MTI Inspection Services testified that the damage was caused mainly by improper packaging. In choosing the person who would inspect the damage, the Defendant clearly had notice of a possible claim against it for the damage.

Second, Plaintiff's intent in salvaging the Rack Assembly was to continue conducting its business and mitigate the loss that it incurred. Again, this benefits the Defendant to the extent that it will be found liable for damage to the Rack Assembly.

Third, the Rack Assembly was salvaged prior to this lawsuit and at a time when Defendant had not requested additional access to it. Further, it was salvaged at a time when Defendant had not raised the issue of improper packaging, so that Plaintiff was not on notice that its own conduct was an issue.

These facts do not support an inference that Plaintiff acted with a consciousness that it had a weak case. Indeed, Plaintiff had delivered the Rack Assembly to Defendant for shipping, and during shipping the Rack Assembly was badly damaged. These facts support only an inference that Plaintiff reasonably expected to be compensated at some level for the damage.

B.     Request for Preclusion of Evidence

The *Jordan F. Miller Corp.* decision is unpublished and is authored by a completely different panel than *Aramburu*. In *Jordan F. Miller Corp.*, the court stated that "[c]ourts have not generally imposed [a requirement of bad faith] when considering other sanctions for the spoliation of evidence." 1998 WL 68879 at *4 (citing cases from other jurisdictions which addressed sanctions such as dismissal or exclusion of evidence). The movant in the *Jordan F. Miller Corp.* case was seeking dismissal. The Tenth Circuit stated that the two factors most important in determining whether a sanction is appropriate are "(1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party." *Id.* (citing cases). Concerning culpability, the Tenth Circuit reiterated the general rule that a litigant "has a duty to preserve evidence that he knows or should know is relevant to imminent or ongoing litigation." *Id.*

5

The relevant facts in *Jordan F. Miller Corp.* are nearly identical to those in this case, except in one crucial respect. In that case, an individual purchased an airplane. On its first flight, the plane's landing gear collapsed. The FAA inspected the plane shortly after the crash. The individual notified his insurance carrier, which then sent an adjustor to inspect the plane. The insurance carrier paid for the repairs, and the allegedly defective landing gear parts were lost or destroyed. Eighteen months later, the individual and his insurance carrier sued the seller of the aircraft. As far as this Court can determine from the Tenth Circuit's opinion, this was the seller's first notice that the plane had crashed. Of course, the seller had no opportunity to inspect the allegedly defective parts and filed a motion to dismiss for spoliation of evidence. The district court granted the motion, and the Tenth Circuit affirmed.

Here, unlike *Jordan F. Miller Corp.*, the Defendant was given immediate notice of the loss (indeed, the loss occurred *while the equipment was in Defendant's possession, custody or control*) and an opportunity to inspect. The Defendant hired an inspector who created a report, complete with photographs. The Court finds little or no culpability on the part of the Plaintiff in salvaging the Rack Assembly, other than the actual conscious decision to salvage it. At the time the Rack Assembly was salvaged, Plaintiff did not know (nor reasonably should have known) that litigation was imminent. Plaintiff had received an offer from Defendant's Cargo Claim Department for approximately $2,000.00. Plaintiff believed that Defendant's claim department did not understand what it was that was shipped and thereafter engaged in an effort to discuss the matter with Defendant. Thus, under the Tenth Circuit's standard for sanctions, the first element has not been met.

Even if Defendant could prove that a reasonable person would have foreseen litigation in October 2004, Defendant does not meet the second element of a spoliation claim. Specifically, the

Court does not find a high degree of actual prejudice to Defendant. First, the damage occurred while the Rack Assembly was in Defendant's possession, custody or control. Defendant's present or former employees or agents have actual knowledge of what happened to the Rack Assembly, how it happened, what the aftermath was, and how the Rack Assembly appeared after the incident. Second, Defendant immediately hired a third party expert to inspect the damaged Rack Assembly in its original packaging. Defendant had full opportunity to inspect and investigate all aspects of the incident that gave rise to this lawsuit, at a time when the evidence was fresh and in its own possession. It took advantage of that opportunity.

Third, the third party inspector has actually testified favorably to Defendant's defense. Indeed, there appears to be at least as much prejudice to Plaintiff, if not more, occasioned by the absence of the actual damaged Rack Assembly.

Fourth, Plaintiff's act in salvaging the Rack Assembly was actually good stewardship given the circumstances, and likely reduced the amount of *potential* damages for which Defendant could be held liable.

Fifth, Defendant was given the opportunity to engage in discovery concerning this disputed issue and, in fact, did so. However, it now appears that Defendant did not take the deposition of Plaintiff's representative who would have the most knowledge concerning the packaging of the Rack Assembly. The Court will deal with that matter at the conclusion of this Order.

Thus, Defendant has not established a sufficient degree of actual prejudice under the *Jordan F. Miller Corp.* standard and should not be entitled to exclusion of evidence as a sanction.

    C.    <u>Effect of Plaintiff's Counsel's Representations</u>

Defendant contends that during a deposition in this case, on September 27, 2005, counsel for

7

the Plaintiff represented that Defendant would be permitted to inspect the damaged Rack Assembly and packaging. Only later did Plaintiff's counsel reveal that he was mistaken, and that the Rack Assembly was not available. In his response brief, Plaintiff's counsel admits that he misstated the availability of the Rack System.

The Court does not believe that this argument lends any support to a sanction for spoliation. The Rack Assembly was salvaged months before the lawsuit was filed, and certainly well before any statements of counsel to the contrary. The Defendant can establish absolutely no prejudice arising from the mistake of Plaintiff's counsel *with regard to inspection of the damaged Rack Assembly*, because by that time, the equipment had been irretrievably altered. However, Defendant could argue that it was effectively lulled into believing that it could have access to the Rack Assembly in its damaged condition and, during the remaining discovery period, may have failed to inquire further into the packing of the Rack Assembly in assuming that it would be able to ultimately inspect the equipment. Therefore, as a remedy for Plaintiff's inadvertent misstatements, the Court will permit Defendant to take a Fed. R. Civ. P. 30(b)(6) deposition of a representative of Plaintiff concerning the construction of the Rack Assembly and how the Rack Assembly was assembled and prepared for shipping in July 2004. Such deposition should be scheduled and completed on or before May 2, 2006.

      D.      Scope of this Court's Order

Defendant's motion seeks sanctions at a preliminary stage in this lawsuit. This Court believes that the relief is not warranted by the law or the facts. However, the sanctions Defendant seeks are inextricably related to the evidence that the parties intend to introduce at trial, and to the jury instructions that the parties intend to proffer. Those are decisions that will be made by the District

Judge who conducts the trial of this matter. Therefore, this Court's Order is without prejudice to the parties raising trial evidentiary motions that are appropriately within the jurisdiction of the trial judge.

III.     Conclusion

Accordingly, for the reasons stated above, Defendant's Motion for Sanctions for Spoliation of Evidence [Filed January 26, 2006; Docket #62] is **denied** without prejudice to any evidentiary motions that are appropriately submitted to the District Judge assigned to this case. Further, Defendant is granted leave to take a Fed. R. Civ. P. 30(b)(6) deposition of a representative of Plaintiff concerning Plaintiff's construction of the Rack Assembly and how the Rack Assembly was assembled and prepared for shipping in July 2004. Such deposition should be scheduled and completed on or before May 2, 2006.

Dated at Denver, Colorado this 3rd day of April, 2006.

BY THE COURT:

 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge