IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00494–EWN–OES

ZOLO TECHNOLOGIES, INC.,
A Delaware corporation,

      Plaintiff,

v.

ROADWAY EXPRESS, INC.,
A Delaware corporation,

      Defendant.

---

**ORDER AND MEMORANDUM OF DECISION**

---

      This is a Interstate Commerce Act case. Plaintiff Zolo Technologies, Inc. alleges that Defendant Roadway Express, Inc., is fully liable in the amount of $125,000 for damage that occurred to goods belonging to Plaintiff while the goods were being transported by Defendant. This matter is before the court on "Defendant Roadway Express, Inc.'s Motion For Partial Summary Judgment," filed November 15, 2005. Jurisdiction is based on 28 U.S.C. § 1331 (2006).

**FACTS**

*1.     Factual Background*

Defendant is a motor carrier authorized to conduct interstate transportation services by the Federal Motor Carrier Safety Administration of the United States Department of Transportation. (Def. Roadway Express, Inc.'s Mot. For Partial Summ. J., Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 1 [filed Nov. 15, 2005] [hereinafter "Def.'s Br."]; *admitted at* Pl.'s Resp. in Opp'n to Def.'s Mot. For Partial Summ. J., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 1 [filed Dec. 12, 2005] [hereinafter "Pl.'s Resp."].)[1] During July 2004, Karlene Groth ran Plaintiff's shipping and receiving department. (*Id.*, Statement of Undisputed Material Facts in Supp. of Its Mot. For Partial Summ. J. ¶ 2; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 2.) Plaintiff, through Groth, contacted Defendant in order to procure a rate quote for a shipment of goods from a trade show in Overland, Kansas to Defendant's office in Boulder, Colorado. (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 3; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed

---

[1]Defendant submitted its "statement of undisputed material facts" as a separate submission from Defendant's motion for partial summary judgment. (Statement of Undisputed Material Facts [filed Nov. 15, 2005].) Plaintiff responded to Defendant's "statement of undisputed material facts" with a separate submission entitled "Plaintiff's Response to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts." (Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts [filed Dec. 12, 2005].) I evaluate these submissions as one document in conjunction with the respective motion and response.


Facts ¶ 3.)  Upon Plaintiff's request, Defendant submitted multiple rate quotes.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 4; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 4.)  Plaintiff admits that its representative read one of the rate quotes which stated as follows: "[l]iability for loss, damage or delay to cargo will not exceed $25 per pound per package, subjected to a maximum liability of $100,000 per shipment, or actual value, whichever is lower." (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 5; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 5.)  Plaintiff contends that based on conversations between Groth and Defendant's representatives, Groth understood the rate quote to be for "full liability for $100,000 and extra liability coverage for $25,000." (Pl.'s Resp. 4–6, Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 7.)  Groth admitted that she read the rate quote and requested an additional $25,000 of liability coverage.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶¶ 13–14; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶¶ 13–14.)  Plaintiff asserts that prior to accepting the rate quote, Groth sent a one-page fax to Defendant that repeated all of her requests for shipment, including the request for a rate quote that covered the $125,000 of the equipment. (Pl.'s Resp. at 5, Statement of Additional Disputed Facts ¶ 2.)  Defendant admits receiving the fax, but contends that it received it prior to sending Plaintiff rate quotes.  (Def.'s Reply, Resp. Concerning Pl.'s Disputed Facts ¶ 2.)

After approval from Plaintiff, Groth verbally accepted Defendant's quote on behalf of Plaintiff via a telephone call to Defendant. (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 7; *admitted in relevant part at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 7.) Plaintiff's accepted rate quote pertained to the transportation of two large crates weighing 350 and 450 pounds and two smaller pieces. (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 9; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 9.)

Following Plaintiff's acceptance of the rate quote, Defendant sent Plaintiff a rate confirmation. (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 11; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 11.) While the Rate Confirmation contained the same liability limiting provisions that appeared in the rate quote, (*id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 12; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 12), Plaintiff contends that this liability limitation provision is inapplicable because Plaintiff requested excess liability. (Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 12.)

Prior to shipping the goods, Defendant sent Plaintiff the Bill of Lading via electronic mail message from Overland Park to Boulder, Colorado. (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 17; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of

Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 17.)  Defendant sent the electronic mail message to both Groth and Zimmerman.  (*Id.*)  Upon receiving the Bill of Lading, Groth specifically checked to see that Defendant included the $25,000 of extra liability coverage.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 18; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 18.)

On July 29, 2002, Defendant picked up Plaintiff's goods for shipment at the Overland Park trade show.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 15; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 15.)  Ron Zimmerman was Plaintiff's sales and marketing representative working at the Overland Park trade show.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 16; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 16.)  Upon delivery to Boulder Colorado, Plaintiff signed for the shipped goods and noted damage to one large crate.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 27; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 27.)  The delivery receipt Plaintiff signed stated "[DEFENDANT'S] TARIFFS LIMIT ITS LIABILITY."  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 28; *admitted in relevant part at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 28.)

## *2.    Procedural History*

On February 22, 2005, Plaintiff filed its initial complaint in Boulder County, Colorado District Court.  (Compl. [filed Feb. 22, 2005].)  Plaintiff asserted claims for: (1) negligence; (2) breach of the contractual duty to deliver the cartons in good condition; (3) breach of the contractual duty to reimburse for actual loss; (4) bailment; and (5) bad faith.  (*Id.* ¶¶ 11–43.)  On March 15, 2005, Defendant removed the action from Boulder County District Court to this court.  (Roadway Express' Notice of Removal [filed Mar. 15, 2005].)

On May 18, 2005, Plaintiff filed its first amended complaint.  (Am. Compl. [filed May 18, 2005] [hereinafter "Am. Compl."].)  Plaintiff's unartfully drafted complaint appears to assert two different breach of contract claims.  (*Id.* ¶¶ 13–25.)  First, Plaintiff alleges that the shipment arrived in damaged condition and "Plaintiff suffered loss from the damaged goods."  (*Id.* ¶¶ 16–18.)  Second, Plaintiff alleges that Defendant breached the contract between them because it failed to pay Plaintiff "the amount of its claim."  (*Id.* ¶¶ 19–25.)  On June 3, 2005, Defendant filed its answer to Plaintiff's complaint.  (Def. Roadway Express, Inc.'s Answer to Pl.'s Am. Compl. [filed June 3, 2005].)

On November 15, 2005, Defendant filed a motion for partial summary judgment.  (Def.'s Br.)  Defendant requests this court to "find the [Defendant's] liability, if any, is limited to $36,250.00."  (*Id.* at 2.)  On December 12, 2005, Plaintiff filed a response in opposition to Defendant's motion.  (Pl.'s Resp.)  On December 30, 2005 Defendant filed a reply in support of its motion for partial summary judgment.  (Def. Roadway Express, Inc.'s Reply in Supp. of its Mot. For Partial Summ. J. [filed Dec. 30, 2005] [hereinafter "Def.'s Reply"].)


**ANALYSIS**

*1.     Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc.*, 36 F.3d at 1518 (citing *Celotex Corp.*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "'Only disputes over facts that might affect the outcome of the suit under governing law will preclude the entry of summary judgment.'" *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998) (quoting *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record must be viewed in the light most favorable to the nonmoving party. *Concrete Works, Inc.*,

36 F.3d at 1518 (citing *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 [10th Cir. 1990].)

### *2.     Limitation of Liability*

Defendant requests that the court grant it partial summary judgment on liability and limit any potential liability Defendant may have in the amount of $36,250.00. (Def.'s Br. at 5.) Specifically, Defendant contends that it lawfully limited its liability under the Carmack Amendment, 49 U.S.C. § 14706(a). (*Id.*) Plaintiff contends that it requested the "full value rate based on its declared value of the shipment and did not agree to any liability limitation below the declared value." (Pl.'s Resp. at 3.)

The Carmack Amendment to the Interstate Commerce Act imposes absolute liability upon carriers for all loss or injury to property caused by the carrier. 49 U.S.C. § 11707(a)(1) (2006). Pursuant to section 14706, carriers are permitted to limit their liability. 49 U.S.C. § 14706. Specifically, "[a] carrier or group of carriers . . . may . . . establish rates for the transportation of household goods under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper or by a written agreement." *Id.* There are four steps a carrier must take to limit its liability under the Carmack Amendment: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shippers' agreement as to its choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Norton v. Jim Phillips Horse Transp., Inc.*, 901 F.2d 821, 827 (10th Cir. 1990) (citing *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1416 [7th Cir. 1987]). Plaintiff does not

dispute that Defendant satisfied the first and fourth steps in the *Hughes* analysis. (Pl.'s Resp. at 4.) Rather, Plaintiff contends that Defendant: (1) did not obtain its "agreement" to a liability limitation under the second step; and (2) Plaintiff selected a "level of liability" that fully valued its shipment as provided under the third step. (*Id.*) I need only evaluate step two below.

The second step in the *Hughes* analysis requires that the carrier, Defendant, obtain the shipper's, Plaintiff's, written agreement of its choice of carrier liability. *Hughes*, 829 F.2d at 1416. Indeed, the shipper must make the declaration or agreement. *Caten v. Salt City Movers & Storage Co.*, 149 F.2d 428, 432 (2d Cir. 1945). Plaintiff argues that it did not agree to limit Defendant's liability under the declared value of $125,000. (Pl.'s Resp. at 4.) Defendant contends that its rate quote, rate confirmation, Bill of Lading, the tariffs incorporated by the Bill of Lading, and the delivery receipt confirm Defendant's liability limitation. (Def.'s Br. at 7.) For the reasons stated below, I find that there are genuine issues of fact regarding whether Plaintiff agreed to limit Defendant's liability in the amount suggested by Defendant.

First, there is no evidence that Plaintiff agreed in writing to limit Defendant's liability. *See Hughes*, 829 F.2d at 1416. Second, the facts viewed in a light most favorable to Plaintiff indicate that Plaintiff understood Defendant's rate quote to be for "full liability for $100,000 and extra liability coverage for $25,000." (Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 7.) Indeed, Plaintiff's representative testified that Defendant knew: (1) Plaintiff valued the shipment at $125,000, and (2) Plaintiff requested a rate that covered this amount. (Def.'s Br., Ex. A–1 at 43 [Dep. of Karlene Groth].) Moreover, on July 30, 2004, Plaintiff sent a fax to Defendant indicating that Plaintiff understood the

insurance value to be $125,000.  (Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts, Ex. 2 [7/24/04 Fax From Plaintiff to Defendant].)  Thus, genuine issues of fact remain regarding whether the parties actually agreed to limit Defendant's liability below $125,000, and summary judgment is not appropriate.

Defendant offers numerous arguments that counsel against this result.  First, Defendant contends that its "Bill of Lading subjected the shipment to, among other things, applicable tariffs incorporated by reference, and it made the tariffs available for inspection upon [Plaintiff's] request."  (Def.'s Br. at 6.)  The tariff states in relevant part that "the carrier's liability will not exceed $25.00 per pound per package, subject to a maximum liability of $100,000 per shipment, whichever is lower, unless the shipper has requested excess liability coverage."  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 24; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 24.)  Here, it is undisputed that Plaintiff requested excess liability coverage.  (*Id.*, Statement of Undisputed Material Facts in Supp. of its Mot. For Partial Summ. J. ¶ 14; *admitted at* Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts ¶ 14.)  Plaintiff's request for excess liability coverage fell within the exception to the tariff's limitation of liability, and negates the applicability of the first portion of the tariff. Thus, Defendant's argument as to this point is unavailing.

Next, Defendant contends that "[b]ecause Plaintiff knew [] it agreed to the terms of the Bill of Lading, including [Defendant's] liability limitation, a unilateral mistake as to the amount of its coverage is not enough to eviscerate [Defendant's] liability limitation."  (Def.'s Br. at 7.)

-10-

Defendant appears to assert two arguments: (1) Plaintiff's failure to properly fill out the Bill of Lading eviscerates Defendant's liability in an amount Plaintiff presumably agreed to; and (2) the reference to 49 U.S.C. § 14706 in the Bill of Lading puts Plaintiff on notice of Defendant's liability limitation. I address each argument below.

First, the terms of the Bill of Lading included the following language "[w]here the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property . . ." (*Id.*, Ex. A–6 [Bill of Lading].) Here, not only does it appear that Plaintiff failed to fill in the agreed or declared amount, but the Bill of Lading is silent to the parties' agreed amount. (*Id.*, Ex. A–6 [Bill of Lading].) In order to satisfy the first *Hughes* factor, the parties must demonstrate that Plaintiff agreed in writing to limit Defendant's liability and that Plaintiff made a declaration or agreement. *See Hughes*, 829 F.2d at 1416. Indeed, the only express mention of liability coverage on the Bill of Lading refers to the excess liability coverage in the amount of $25,000. (*Id.*) Thus, despite Plaintiff's mistake there are genuine issues of fact regarding the agreed amount of liability. Moreover, Plaintiff did not sign the Bill of Lading. "'Although action in writing by the shipper is plainly required, his signature is not necessary but it does furnish good evidence that he did declare or agree in writing.'" *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129, 134 (7th Cir. 1967). Thus, even assuming that Plaintiff was required to fill in the Bill of Lading, genuine issues of fact remain regarding whether the Bill of Lading incorporates the parties' agreed upon limitation of liability.

Second, Defendant contends that the Bill of Lading's reference to 49 U.S.C. § 14706(c)(1)(A) and (B) incorporates Defendant's rate quotes and thereby limits its liability.

(Def.'s Br., Ex. A–6 [Bill of Lading].) Defendant essentially argues that the Bill of Lading's reference to section 14706 eviscerates its necessity to obtain Plaintiff's agreement in writing. Title 49 section 14706 states in relevant part:

> (A) Shipper waiver. — Subject to the provisions of subparagraph (B), a carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 may, subject to the provisions of this chapter . . . establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding transportation.
> (B) Carrier notification. — If the motor carrier is not required to file its tariff with the Board, it shall provide to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier is based. The copy provided by the carrier shall clearly state the dates of applicability of the rate, classification, rules, or practices.

49 U.S.C. § 14706(c)(1)(A) and (B) (internal citations omitted). While Defendant did send Plaintiff numerous rate quotes that appear to limit its liability in the manner proposed, (Def.'s Br., Exs. A–2–A–5 [Time Critical Quotes]), Plaintiff also sent Defendant at least two faxes which appear to indicate that it requested insurance in the amount of $125,000. (Pl.'s Resp., Pl.'s Resp. to Statement of Undisputed Material Facts and Statement of Additional Disputed Facts, Ex. 2 [7/24/04 Fax From Plaintiff to Defendant].) Thus, irrespective of Defendant's rate quotes, it appears there are genuine issues of fact regarding the agreed upon amount of Defendant's liability. Accordingly, Defendant cannot satisfy the second step in the *Hughes* analysis and is not entitled to summary judgment.

### 3. *Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1. Defendant's motion for partial summary judgment (# 47) is DENIED.

2. The hearing scheduled for Friday, July 28, 2006, is VACATED.

3. The court will hold a Final Pretrial Conference commencing at 10:45 o'clock a.m. on Friday, August 11, 2006, in Courtroom A1001 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at http://www.cod.uscourts.gov/forms/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 26th day of July, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge